# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

OMARR FORD,

   Petitioner,

  v.         Case No. 06-C-1052

PAMELA WALLACE,

   Respondent.

## DECISION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

### I. PROCEDURAL BACKGROUND

 On October 10, 2006, the petitioner, Omarr Ford ("Ford"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his confinement at the Stanley Correctional Institution where the respondent, Pamela Wallace, is warden.[1] Ford was convicted of one count of second degree sexual assault following a jury trial in the Milwaukee County Circuit Court on August 13, 2004. On September 10, 2004, Ford was sentenced to fifteen years of initial confinement, to be followed by ten years of extended supervision.

 Ford appealed his conviction, and in a decision dated April 10, 2006, the Wisconsin Court of Appeals affirmed his conviction. Ford's petition for review in the Wisconsin Supreme Court was

---

[1]Peg Lautenschlager was the original respondent in this matter. However, Ford is currently in custody at the Stanley Correctional Institution, where Pamela Wallace is the warden. As such, Pamela Wallace is substituted as the named respondent in this matter because the proper respondent is Ford's custodian. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

denied on August 31, 2006, and Ford did not file a petition for certiorari in the United States Supreme Court. As stated previously, Ford filed his federal habeas petition on October 10, 2006.

Ford's habeas petition raises five claims: (1) that the State committed prosecutorial misconduct by withholding the victim's medical records until the day of the trial; (2) that the state trial court violated Ford's right to a speedy trial by granting a continuance in order to accommodate Ford's request for the victim's medical records; (3) that Ford received ineffective assistance of counsel at the trial; (4) that the trial court failed to remove a biased juror; and (5) that Ford's conviction violated double jeopardy. The respondent concedes that Ford has exhausted his state court remedies with respect to the issues raised in his habeas petition and that the petition was timely filed.

## II. FACTS

The following is a summary of the facts underlying Ford's conviction as set forth by the Wisconsin Court of Appeals.

Ford was charged with two counts of second-degree sexual assault, by use or threat of use of force or violence, against Nieka S. Nieka testified that she and her two young sons, aged four and two, moved in with Ford because the house she had been living in was infested with rats and roaches. Nieka did not know Ford well, and the living arrangement was suggested by an acquaintance of Nieka who was Ford's cousin. Nieka moved into Ford's two-room apartment on January 15, 2003. Ford told her that she and her children could sleep in the bed and he would sleep on the couch.

On January 17, 2003, two of Ford's friends, including Frederick Banks, were visiting at the apartment. Ford and his friends left for the evening and Nieka and her children stayed home. When Ford and Banks returned, Nieka was asleep with the children in the bedroom. Ford turned on the light and woke her up. He asked her for a cigarette and Nieka told him she did not have any cigarettes. Nieka testified that Ford appeared drunk and he insisted that she give him a cigarette. The conversation escalated into an argument and Ford told Nieka that he "was going to beat [her] ass." Nieka testified that they "got to tussling" and pushing and she bit him on the chest. Ford then hit Nieka in the eye and she released the bite. Nieka testified that her sons

2

woke up and started "hollering." Ford then reached under the bed, retrieved a shotgun, and started hitting Nieka on her legs with the butt end of the weapon . Nieka testified that Ford called her a "bitch" and that she "shouldn't have bit" him.

At this point, Banks came into the room and told Ford to put the gun away before someone got hurt. Ford gave him the gun and Banks took it into the other room. Banks then came back and took the children into the other room. Nieka testified that Ford then took an extension cord and "started whacking" her "all over." Ford told Nieka that "[he] and his friend wanted some pussy." Ford told Nieka to take off her clothes. She testified that she took off her pants and underwear because she was afraid that Ford would kill her and her children. Ford then "climbed up on top" of Nieka and put "his penis … in [her] vagina."

Ford then got up and told Nieka that his "friend [is] going to want some, too." Ford left the room and closed the door. Soon thereafter, Banks came into the room and closed the door. Nieka was crying and Banks sat on the bed next to her and put his arm around her shoulders. He told Nieka that she "didn't have to have sex with him if [she] didn't want to." Nieka testified that they "heard somebody by the door" and Banks "g[ot] on top of [her] so [Ford would] think we [were] doing something." She testified that she thought Banks was afraid of Ford. After Ford "peeked in," Banks left, returned with a condom, and had sexual intercourse with Nieka.

Banks then left and Nieka washed herself. Banks brought her children into the room and left. Nieka could hear Ford and Banks in the kitchen. Ford came into the room and asked Nieka if she wanted some chicken. She declined. Ford then told Nieka that "he wanted some more" which she interpreted as he wanted to have sex again. Ford "got on top of" Nieka and "stuck his penis in [her] vagina." Nieka testified that the children were on the bed while Ford assaulted her. Ford then fell asleep on the bed. Nieka testified that she did not think Ford ejaculated during either assault. In the morning, Nieka left the house with her children, went to a friend's house and contacted police.

Nieka testified at length about her history of mental health problems. She testified that she has been diagnosed as "bipolar" and that she has "mood swings" which range "from sad to happy and from one extreme to the next." Nieka admitted that she had been hospitalized for depression and paranoia in December 2002. While hospitalized, Nieka told the doctors that she heard voices that told her she "was no good and kind of helpless and hopeless." She admitted that she tested positive for cocaine and marijuana when she was hospitalized but testified that she has not "used since" her discharge. She testified that she was prescribed several anti-depressant medications and that when she was released from the hospital on January 2, 2003, she was "stable." Nieka testified that with the medication, the voices are "muffled" but she can "always hear them." Nieka was still taking the medications at the time of

3

trial. Nieka testified that she has never been delusional, meaning that she would "think something happened that didn't happen."

   Banks testified at trial. His testimony was largely consistent with Nieka's testimony. [footnote omitted] He admitted to having sex with Nieka. He testified that he was charged with sexual assault and had pled guilty. Banks also testified that he was not receiving any consideration for his testimony against Ford.
   Ford's theory of the defense was that only Banks had sexually assaulted Nieka and that her belief that Ford had done so was delusional, arising from her mental illness. Ford's counsel cross-examined Nieka at length about her mental health and medications.

(Dkt. 11, Ex. D:2-5).

### III.  STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("'[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.'") (quoting *Hass v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990)).

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief under Section 2254 unless the state court's judgment

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97

4

F.3d 189, 192 (7th Cir. 1996)). A federal habeas court may not rely on its own precedent or that of circuit courts of appeals. There must be Supreme Court precedent to support the petitioner's claim and that Supreme Court precedent must have clearly established the relevant legal principle as of the time of the petitioner's direct appeal. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). A state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable. *Connor v. McBride*, 375 F.3d 63, 649 (7th Cir. 2004) (citation omitted).

Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

The AEDPA's deferential standard of review only applies where a state court has adjudicated a petitioner's claim on the merits. *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005); *Braun v. Powell*, 227 F.3d 908, 916 (7th Cir. 2000). Where there is no state court decision on the merits, a

5

federal habeas court applies the standard of 28 U.S.C. § 2243, and disposes of the petitioner's claim "as justice and law require." *Id.* at 917.

That having been said, before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (internal quotations omitted). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner

6

failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50 (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray*, 477 U.S. at 496). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).

7

# IV.  DISCUSSION

The respondent argues that Ford procedurally defaulted all of his claims because he did not properly present them to the Wisconsin Supreme Court.  Specifically, the respondent contends that Ford's petition for discretionary review with the Wisconsin Supreme Court did not specifically identify the claims he wished to raise, and consequently his petition did not constitute a fair presentment of his claims to the Wisconsin Supreme Court.

In his petition for review with the Wisconsin Supreme Court, Ford stated that

> I'm filing a Petition for Review with the Supreme Court [] pursuant to Wis. Stats. Sec. 809.62.  Because I have grounds and issues. [] In my case for dismissal. [] And I didn't do this crime at all.[] therefore, I'm asking for a motion to dismiss due to prejudice [] And for Post-conviction Relief. 809.30(2)(b).  Because this whole case was prejudice.  So please Petition for Review [] And grant a motion to dismissed due to prejudice. 809.62.  And some of my issues that I file with my motion brief have been left out.  So please look over my motion brief and my whole case.  I had 21 pages that I gave to District 1 I gave District 1 9 issues.  But they only brought up these. [] Where are the other ones [] that I gave them to bring up.  Could you please look over that [] them issues I'm talking about.  And if you need me to send my motion brief [] Back in to y'all I would. So please let me know if I go to.  Because all of the issues is not in their at all.  So please keep in touch.  And let me know do I have to send my motion brief to ya'll the Supreme Court.  Because all of my issues is not in that brief.  I have lots of copies.  So please let me know do I have to send a copy to ya'll the Supreme Court.  And my whole case was lack of evidence.  So I'm asking for a motion to dismissed due to prejudice.  809.62.  809.30(2)(b).

(Dkt. 11, Ex. E.)

Ford attached to his petition for review a copy of the Wisconsin Court of Appeals' decision affirming his conviction. The Wisconsin Supreme Court denied the petition for review on August 31, 2006.

"[T]o preserve a claim for federal collateral review, the petitioner must fairly present his claim to all levels of the state judiciary by "articulating the point in such a way that a judge could

8

grasp both its substance and its foundation in federal law." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.")).

In his petition for review before the Wisconsin Supreme Court, Ford merely asserts that "this whole case was prejudice," and asks the court to review the nine issues he presented to the Wisconsin Court of Appeals in his earlier appellate brief. Ford did not specifically identify those nine issues in his petition for review such that the Wisconsin Supreme Court could identify a federal issue without looking at either the Wisconsin Court of Appeals' decision or Ford's brief filed with the Wisconsin Court of Appeals.

The United States Supreme Court has addressed the issue of whether referencing a lower court opinion or an earlier appellate brief in a petition for review constitutes "fair presentment" of a federal claim to a state appellate court:

> We recognize that the justices of the [State] Supreme Court did have an "opportunity" to read the lower court opinions in [the petitioner's] case. That opportunity means that the judges could have read them. But to say that a petitioner "fairly presents" a federal claim when an appellate judge can discover that claim only by reading lower court opinions in the case is to say that those judges must read the lower court opinions--for otherwise they would forfeit the State's opportunity to decide that federal claim in the first instance. In our view, federal habeas corpus law does not impose such a requirement . . . We consequently hold that ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.

9

*Baldwin*, 541 U.S. at 31-32; *see also Lockheart*, 443 F.3d at 929 ("[I]f the state's Supreme Court must read the decision of its appellant court in order to learn what the petitioner is arguing, then the issue has not been preserved for federal decision; a petition must contain each contention, and not just point to some other document where it might be located.").

In the case at hand, the Wisconsin Supreme Court would have had to look beyond the petition, and read the lower court's decision as well as Ford's earlier appellate brief, in order to alert it to the presence of a federal claim. However, the Wisconsin Supreme Court was "under no obligation to track down and peruse those documents." *Lockheart*, 443 F.3d at 929 (petitioner failed to fairly present his claim by asking "the Supreme Court to read other documents, such as his appellate brief and his 'Petition for Leave to Appeal as a Matter of Right and in the Alternative' that he had filed in support of an earlier request for review.).

If Wisconsin state rules allowed litigants to present arguments in a petition for review by incorporation by reference, citation to outside documents may have preserved Ford's claims. *See Lockheart*, 443 F.3d at 929 ("if state rules entitled litigants to present arguments by incorporation, then use of that approved device would preserve these issues."). However, Wisconsin has no such state rule. Rather, under Wis. Stat. § 809.62(2)(e): "All contentions in support of the petition must be set forth in the petition."[2]

─────────────────────

[2]Wis. Stat. § 809.62(2), which sets forth the required contents of a petition for review, also provides that:

(2) . . . the petition must contain:

(a) A statement of the issues presented for review, the method or manner of raising the issues in the court of appeals and how the court of appeals decided the issues.

. . .

10

In sum, because Ford failed to state in his petition for review any of his contentions with sufficient detail to alert the Wisconsin Supreme Court to the presence of a federal claim (much less any particular claim, federal or otherwise), Ford has procedurally defaulted all of his claims.

As previously stated, however, a procedurally defaulted claim may be reviewed "if the petitioner can show cause and prejudice for [his] failure to exhaust [his] claims, or if a failure to review them on these procedural grounds would result in a fundamental miscarriage of justice." *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999). A "fundamental miscarriage of justice" is shown where "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Rodriguez*, 193 F.3d 913, 917 (7th Cir. 1999) (quoting *Murray*, 477 U.S. at 495-96). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

In the case at hand, Ford has not attempted to make either showing and, therefore, he cannot overcome the procedural default of his claims. *See Spreitzer v. Schomig*, 219 F.3d 639, 647-48 (7th Cir. 2000). Consequently, Ford's claims are procedurally defaulted.

---

    (c) A concise statement of the criteria of sub. (1) relied upon to support the petition, or in the absence of any of the criteria, a concise statement of other substantial and compelling reasons for review.

    (d) A statement of the case containing a description of the nature of the case; the procedural status of the case leading up to the review; the dispositions in the trial court and court of appeals; and a statement of those facts not included in the opinion of the court of appeals relevant to the issues presented for review, with appropriate references to the record.

    (e) An argument amplifying the reasons relied on to support the petition, arranged in the order of the statement of issues presented. All contentions in support of the petition must be set forth in the petition.

11

## V. CONCLUSION

In conclusion, this court is satisfied that the petitioner is not entitled to federal habeas corpus relief because he has procedurally defaulted all of his claims. Accordingly, Ford's petition for a writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that Ford's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is dismissed.

**SO ORDERED** this 20th day of August 2007, at Milwaukee, Wisconsin.


s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge